Dec-10-04   01:54pm   From-PILLSBURY WINTHROP LLP SV V&1WB          6502334545          T-877   P.002/014   F-017

1  PILLSBURY WINTHROP LLP
   William F. Abrams (State Bar No. 88805)
2  Thomas F. Chaffin (State Bar No. 112368)
   Chang H. Kim (State Bar No. 195554)
3  2475 Hanover Street
   Palo Alto, CA 94304-1114
4  Telephone: (650) 233-4500
   Facsimile:  (650) 233-4545
5
6  Attorneys for Defendants and Counterclaimants
   Monica Aszterbaum, M.D., Andrew Cassidenti, M.D.,
7  Eunice U. Lee, M.D., Carla Wells, M.D., Anita York, M.D.,
   Bruce A. Hagadorn, M.D., Rajasree T. Seshadri, M.D., and
8  Arthur Goldstein, M.D.

               UNITED STATES DISTRICT COURT
9               CENTRAL DISTRICT OF CALIFORNIA
10                  SOUTHERN DIVISION

11
   PHARMASTEM THERAPEUTICS,          )  Case No. SA-CV-04-921 GLT-(ANx)
12  INC., a Delaware corporation,     )
                                      )  **DEFENDANTS AND**
13             Plaintiff,             )  **COUNTERCLAIMANTS' NOTICE**
                                      )  **OF MOTION AND MOTION TO**
14        vs.                         )  **STAY PROCEEDINGS PENDING**
                                      )  **RESOLUTION OF THE**
15  CURESOURCE, INC., a South         )  **MULTIDISTRICT LITIGATION**
   Carolina corporation, MONICA       )  **MOTION TO TRANSFER FOR**
16  ASZTERBAUM, an individual,        )  **CONSOLIDATION AND**
   ANDREW CASSIDENTI, an              )  **COORDINATION OF PRETRIAL**
17  individual, EUNICE U. LEE, an     )  **PROCEEDINGS IN A SINGLE**
   individual, CARLA WELLS, an        )  **FORUM AND SUPPORTING**
18  individual, ANITA YORK, an        )  **MEMORANDUM OF POINTS AND**
   individual, ELIOT ROMERO, an       )  **AUTHORITIES IN SUPPORT**
19  individual, KATHY ANDERSON, an    )  **THEREOF**
   individual, NASRIN FARBAKHSH,      )
20  an individual, BRUCE A.           )  Date: January 24, 2005
   HAGADORN, an individual,           )  Time:  10 a.m.
21  RAJASREE T. SESHADRI, an          )  Location:  Courtroom 10D
   individual, ARTHUR GOLDSTEIN,      )  Judge:  Hon. Gary L. Taylor
22  an individual, and CHARLES W.     )
   MONIAK, an individual,             )
23                                    )
             Defendants.             )
24                                    )
                                      )
25  RELATED COUNTERCLAIMS            )
                                      )
26
27
28



60382029v1
11401084.hf - 12/10/2004 1:55:18 PM

## I.    NOTICE OF MOTION

1.    To PharmaStem Therapeutics, Inc. ("PharmaStem") and its attorneys, PLEASE TAKE NOTICE THAT at 10:00 a.m. on January 24, 2005, or earlier as counsel may be heard before the Honorable Gary L. Taylor in the United States District Court at Santa Ana, California, Defendants and Counterclaimants Monica Aszterbaum, Andrew Cassidenti, Eunice U. Lee, Carla Wells, Anita York, Bruce A. Hagadorn, Rajasree T. Seshadri, and Arthur Goldstein (referred to individually and collectively as "Doctor Defendants") will move the Court to stay all proceedings pending the decision from the Judicial Panel on Multidistrict Litigation ("JPML") on Doctor Defendants' Motion to Transfer for Consolidation and Coordination of Pretrial Proceedings in a Single Forum (the "MDL Motion") in the case of *In re PharmaStem Therapeutics, Inc. Patent Litigation*, MDL Docket No. 1660. This Motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, Declaration of Chang H. Kim, and such other material as may be presented to the Court before or at the hearing. This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on November 8, 2004. Exhs. 1 and 2[1].

## II.    MEMORANDUM OF POINTS AND AUTHORITIES

### A.    INTRODUCTION

In July and August 2004, PharmaStem initiated five separate lawsuits against over twenty (20) defendants in five district courts: (a) *PharmaStem Therapeutics, Inc. v. CureSource, Inc., et al.,* filed on August 4, 2004, in the

---

[1]    All exhibits, except as noted, are attached to the Declaration of Chang H. Kim in Support of Defendant Doctors' Motion to Stay Proceedings Pending Resolution of the Multidistrict Litigation Motion to Transfer for Consolidation and Coordination of Pretrial Proceedings in a Single Forum, filed concurrently herewith.

1  United States District Court for the Central District of California as Civil

2  Action No. SA-CV-04-921 GLT, and assigned to the Honorable Gary L.

3  Taylor (the "Central District Action"); (b) *PharmaStem Therapeutics, Inc. v.*

4  *CBR Systems, Inc., et al.,* filed on July 28, 2004 in the United States District

5  Court for the Northern District of California as Civil Action No. C04-3072

6  JSW, and assigned to the Honorable Jeffrey S. White (the "Northern District

7  Action") (Exh. 3); (c) *PharmaStem Therapeutics, Inc. v. ViaCell, Inc., et al.,*

8  filed on July 28, 2004, in the United States District Court for the District of

9  Massachusetts Civil Action No. 04-CV-11673 RWZ (the "Massachusetts

10  Action") (Exh. 4); (d) *PharmaStem Therapeutics, Inc. v. Cyro-Cell*

11  *International, Inc., et al.,* filed on July 28, 2004, in the United States District

12  Court for the Middle District of Florida Civil Action No. 8:04-CV-1740-T-

13  30TGW, and assigned to the Honorable James S. Moody, Jr. (the "Florida

14  Action") (Exh. 5); and (e) *PharmaStem Therapeutics, Inc. v. Corcell, Inc., et*

15  *al.,* filed on July 28, 2004, in the United States District Court for the Eastern

16  District of Pennsylvania Civil Action No. 2:04-CV-03561-RK (the

17  "Pennsylvania Action") (Exh. 6).

18      In all of these lawsuits, PharmaStem asserted U.S. Patent Nos.

19  6,569,427 ("the "'427 Patent) and 6,461,645 (the "'645 Patent") against

20  physicians, medical groups, health care facilities and/or private umbilical cord

21  blood banks. In the Central District Action, PharmaStem asserted the '427

22  Patent against twelve (12) physicians and further asserted the '645 Patent and

23  U.S. Patent No. 5,004,681 (the "'681 Patent") against a cord blood bank

24  company, Curesource, Inc.

25      Almost three years ago in February 2002, PharmaStem filed a lawsuit in

26  the District of Delaware against numerous cord blood bank companies

27  alleging infringement of the '681 Patent and U.S. Patent No. 5,192,553 (the

28  "'553 Patent"), *PharmaStem Therapeutics, Inc. v. ViaCell, Inc., et al,* C.A. No.

1  02-148-GMS, and assigned to the Honorable Gregory M. Sleet (the "Delaware

2  Action"). The '427 Patent and the '645 Patent derive from and are

3  continuation and/or continuation-in-part patents to the '681 Patent and the

4  '553 Patent.

5      The Delaware Action went to trial before Judge Sleet in October 2003.

6  On September 15, 2004, Judge Sleet entered his ruling on post-trial motions

7  finding, *inter alia*, that defendants, the umbilical cord blood companies, were

8  entitled to judgment as a matter of law on non-infringement of the '553 Patent

9  and a new trial on infringement of the '681 Patent. Exh. 7.

10      In late October 2004, defendants in these six actions moved the JPML

11  pursuant to 28 U.S.C. §1407 to Transfer for Consolidation and Coordination

12  of Pretrial Proceedings in a Single Forum (the "MDL Motion") to the District

13  Court of Delaware. Exhs. 8 and 9. PharmaStem opposed the MDL Motion,

14  but stated that if transferred was ordered, that these actions should be

15  transferred to (in order of preference): (1) the Northern District of California;

16  (2) the Central District of California; (3) Middle District of Florida, the

17  Eastern District of Pennsylvania, or the District of Massachusetts or (4) any

18  judge in the District of Delaware other than Judge Sleet. Exh. 10, page 4.

19      This Court has authority to stay all proceedings pending the decision by

20  the Judicial Panel on Multidistrict Litigation. See *Hertz Corp. v. The Gator*

21  *Corp.*, 250 F.Supp.2d 421, 426 (D.N.J. 2003); see also *Moore v. Wyeth-Ayerst*

22  *Laboratories*, 236 F. Supp.2d 509, 511 (D.Md 2002) (The MDL Panel has

23  held that a district court has the authority to wait for a transfer order without

24  ruling on a motion). In fact, on November 10, 2004, Judge Moody in the

25  Florida Action entered an order staying proceedings in the Florida Action for

26  120 days to permit the JPML to consider the pending MDL motion and to

27  avoid a waste of resources of the court and parties. Exh. 11. Judge Moody

28  expressed his view that "all these related cases across the country ought to be

1  resolved by one court" and " it's not for judicial economy to have five

2  differente courts trying to construe the same patents." Exh. 12, page 19.

3  Moreover, defendants in the Northern District Action and the Pennsylvania

4  Action have filed their motions to stay proceedings pending resolution of the

5  MDL Motion. Exhs. 13 and 14.

6     There is no justifiable reason why this Court should not granted a stay

7  in this Action as it would clearly promote judicial efficiency, lessen the burden

8  on the parties and the courts imposed by proceeding in the several

9  jurisdictions, and there is no prejudice to PharmaStem caused by the stay.

### B.    REQUESTED RELIEF

Doctor Defendants request this Court to stay all proceeding pending the
decision of the JPML on the MDL Motion.

### C.    STATEMENT OF RELEVANT FACTS

#### 1.    PHARMASTEM PATENTS

On August 4, 2004, PharmaStem brought the Central District Action
against CureSource, Inc. and twelve (12) physicians, alleging infringement of
the '427 Patent, the '645 Patent and the '681 Patent. The Doctor Defendants
responded to the Complaint and asserted counterclaims of non-infringement,
invalidity, and unenforceability on September 30, 2004, after this Court
granted Doctor Defendants' *Ex Parte Application For Extension of Time to
File a Responsive Pleading*.

Both the '427 Patent and the '645 Patent derived from a single patent
application, Serial No. 07/119,746, filed November 12, 1987, which is now
the '681 Patent. The '427 patent also derives from the '553 Patent. In
general, all four patents relate to compositions and methods involving the
preservation of stem cells derived from human umbilical cord blood and

1  therapeutic uses of such cells.  The bulk of the specification of each patent is
2  identical, and there are close parallels among the claims.  The '681 Patent and
3  the '553 Patent have been litigated extensively in the Delaware Action during
4  the past three years.

5       Below is the table identifying PharmaStem's patents that it alleged are
6  infringed by the defendants in the six different actions.  The '427 patent and
7  the '553 patent are continuation and/or continuation-in-parts to the '681 patent
8  and the '553 patent.

9

|  | the '681 patent | the '553 patent | the '427 patent | the '645 patent |
|---|---|---|---|---|
| Delaware Action | Asserted | Asserted | Not Asserted | Not Asserted |
| Northern District Action | Not Asserted | Not Asserted | Asserted | Asserted |
| Central District Action | Asserted | Not Asserted | Asserted | Asserted |
| Massachusetts Action | Not Asserted | Not Asserted | Asserted | Asserted |
| Florida Action | Not Asserted | Not Asserted | Asserted | Asserted |
| Pennsylvania Action | Not Asserted | Not Asserted | Asserted | Asserted |

21       2.   PROCEDURAL HISTORY OF LAWSUITS

23       In February 2002, PharmaStem filed a patent infringement suit in
24  Delaware against several companies engaged in the private banking of
25  umbilical cord blood, alleging infringement of the '681 Patent and the '553
26  Patent.  In October 2003, a jury trial was completed.  On September 15, 2004,
27  Judge Sleet entered his ruling on post-trial motions finding, *inter alia*, that
28  defendants, the umbilical cord blood companies, were entitled to judgment as

1  a matter of law on non-infringement of the '553 Patent and a new trial on

2  infringement of the '681 Patent. Exh 7.

3      Judge Sleet has also considered motions relating to PharmaStem's

4  conduct regarding its threats of enforcement of all of its patents, in which the

5  scope of the claims of those patents is at issue. While the post-trial motions in

6  the Delaware Action were pending, on July 2, 2004, Judge Sleet issued an

7  injunction order against PharmaStem. Exh. 15. Judge Sleet found that certain

8  statements made by PharmaStem, in an effort to dissuade obstetricians and

9  hospitals from collecting umbilical cord blood for their patients who were

10  customers of one of the defendants, were false and misleading, and he

11  enjoined PharmaStem from making any further false and misleading

12  statements directed to obstetricians. Id.

13

14  In several of the recently-filed actions, the defendant cord blood banks

15  have asserted counterclaims against PharmaStem. These claims are for unfair

16  trade practices, tortious interference and similar claims arising out of

17  allegations of false and misleading statements made to obstetricians and the

18  general public threatening enforcement of PharmaStem's patents beyond the

19  scope of those patents. In one action, several cord blood banks presented

20  claims of antitrust and Lanham Act violations by PharmaStem arising from

21  PharmaStem's efforts to require obstetricians to agree to refrain from conduct

22  that is beyond the scope of PharmaStem's patents as a condition of avoiding

23  suit for infringement of those patents.

24  Numerous defendants in these actions have filed motions to stay

25  proceedings in the Northern District of California and the Eastern District of

26  Pennsylvania pending the resolution of the MDL motion. Exhs. 13 and 14.

27  On November 10, 2004, Judge Moody in the Florida Action entered an order

28  staying proceedings in the Florida Action for 120 days to permit the JPML to

1    consider the pending motion and to avoid a waste of resources of the court and

2    parties. Exh. 11. Judge Moody expressed his view that "all these related

3    cases across the country ought to be resolved by one court" and " it's not for

4    judicial economy to have five different courts trying to construe the same

5    patents." Exh. 12, page 19.

6        **D.    ARGUMENTS**

7        "The power to stay proceedings is incidental to the power inherent in

8    every court to control the disposition of the causes on its docket with economy

9    of time and effort for itself, for counsel, and for litigants. *Landis v. North*

10   *American Co.*, 299 U.S. 248, 254-255, 257 S.Ct. 163, 166, 81 L.Ed. 153, 158-

11   159 (1936). To accomplish this, "a trial court may, with propriety, find it is

12   efficient for its own docket and the fairest course for the parties to enter a stay

13   of an action before it pending resolution of independent proceedings which

14   bear on the case. This rule applies whether the separate proceedings are

15   judicial, administration, or arbitral in character." *Leyva v. Certified Grocer's*

16   *of California Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979) (citations omitted), quoted

17   in *Mediterranean Enterprises, Inc. v. Ssangyung*, 708 F.2d 1458, 1465 (9th Cir.

18   1983). Factors to be considered in deciding whether to enter a stay include

19   judicial efficiency, burden on the parties imposed by proceeding with two

20   actions, and any prejudice caused by delay. See *Micron Technology, Inc. v.*

21   *Mosel Vitelic Corp.*, 1999 U.S. Dist. Lexis 4792, *10 (D.C. Idaho 1999);

22   *Organon Teknika Corp. v. Hoffman-La Roche, Inc.*, 1997 U.S. Dist. Lexis

23   3798, *7 (M.D. N.C. 1997). With the increased calendar congestion in federal

24   courts and other considerations of judicial efficiency, it is not only appropriate

25   by necessary for courts to avoid parallel actions wherever possible. *Crawford*

26   *v. Bell*, 599 F.2d 890, 893 (9th Cir. 1979); *Yamaha Hatsudoki Kabushiki*

27   *Kaisha v. Bombardier, Inc.*, 60 U.S.P.Q. 2d (BNA) 1541 (C.D. Cal. 2001).

28        As Judge Sleet recently observed, he is "intimately familiar" with the

Dec-10-04 ' 01:56pm  From-PILLSBURY WINTHROP LLP SV V#1#B      6502334545       T-877  P.010/014  F-017

1  issues in the lawsuits.[2] Doctor Defendants, along with the other defendants in

2  the other related lawsuits, filed the MDL Motion to transfer for consolidation

3  and coordination of pretrial proceedings in a single forum, the Delaware

4  District Court.  Consolidation and coordination in a single forum of these

5  actions will significantly advance the just and efficient conduct of the

6  litigation as well as the convenience of the parties, because of the great

7  similarity in subject matter of all the cases.  Choosing the District of Delaware

8  as that forum makes the most sense because PharmaStem bought the first case

9  there, the judge there has already conducted a trial of issues related to those

10  commonly presented in all of the cases and it is a forum that is convenient for

11  most parties.

12      PharmaStem opposed consolidation, but has indicated that if

13  consolidation was ordered, all the cases should be transferred to one forum in

14  the following order of preference: (1) the Northern District of California; (2)

15  the Central District of California; (3) Middle District of Florida, the Eastern

16  District of Pennsylvania, or the District of Massachusetts or (4) any judge in

17  the District of Delaware other than Judge Sleet. Exh. 9, page 4.  Accordingly,

18  there is a high likelihood that these actions will be consolidated in the District

19  Court of Delaware or in one of the District Courts of California in the coming

20  months.

21      There is no justifiable reason why this Court should not granted a stay

22

23  [2] As Judge Sleet stated in a telephonic conference with counsel for the parties in the Delaware Action on
24  October 5, 2004, "Well, this Court is intimately familiar. It has had it now, as you point out in the
    plaintiff's motion for the issuance of a preliminary injunction, is very familiar with the background
    involved here, with the particular issues that are in dispute. The Court, after all, has had a jury trial and
25  presided over a jury trial on the matter and has had the opportunity to peruse and investigate and consider
    in-depth post-verdict motions and the record in support of those motions. So to the extent that **these other**
26  **patents might be placed before this court** ...after all, as I understand it, **they raise, if not identical**
    **issues, at least very, very similar issues to the '681 and '553 patents.**" (emphasis added) (Transcript of
27  hearing, October 5, 2004 at pp. 10-11, a copy of which is attached as Exh. 16).

28

Dec-10-04  01:57pm  From-PILLSBURY WINTHROP LLP SV V#1WB        6502334545        T-877  P.011/014  F-017

1  in this Action as it would clearly promote judicial efficiency, lessen the burden

2  on the parties and the courts imposed by proceeding in the several

3  jurisdictions, and there is no prejudice to the PharmaStem caused by the stay.

4  While the MDL Motion is pending, all proceedings[3] should be stayed to avoid

5  wasting this Court's resources and time because if the MDL Motion is

6  granted, there may be inconsistent rulings and duplicative effort by the

7  different courts. See *Moore* at 511 (The MDL Panel noted that

8  "[c]entralization under Section 1407 is...necessary in order to eliminate

9  duplicative discovery, prevent inconsistent or repetitive pretrial rulings,..., and

10  conserve the resources of the parties, their counsel and the judiciary). As

11  noted above, the Delaware Court is intimately familiar with the patents at

12  issue. During the past three years, Judge Sleet has been intimately involved

13  in, *inter alia*, (1) a claim construction hearing on the '681 Patent and '553

14  Patent, (2) discovery disputes and motions, (3) a two week jury trial, (4)

15  preliminary injunction motions and hearing, and (5) numerous post trial

16  motions.

17  Absent a stay in this Action, there is a real concern for inconsistent

18  rulings. For example, the parties, particularly PharmaStem, can bring issues

19  before any of the six district courts and argue about which ruling applies. One

20  such obvious concern is that PharmaStem can conduct parallel claim

21  construction hearings at different district courts, and there is a real danger that

22  the claim construction rulings will be inconsistent among the district courts.

23  Moreover, there will not be any prejudice or injury to PharmaStem

24  during the stay. Discovery has not begun and there are no pending motions in

25  this Action. *Hertz Corp.* at 426 (granting motion to stay pending MDL motion

26

27  [3] "All proceedings" includes, but not limited to, initial disclosures, discovery, and motions. PharmStem and
Doctor Defendants have agreed to postpone exchanging disclosure under Fed.R.Civ.P. Rule 26(a)(1) to on

28  or before February 11, 2005. See Case Management Report filed December 6, 2004.

Dec-10-04  01:57pm  From-PILLSBURY WINTHROP LLP SV V#1WB        6502334545        T-877  P.012/014  F-017

1  because the party opposing the stay can secure effective relief after the stay is

2  terminated).  PharmaStem will not suffer any irreparable injury as a result of

3  this stay.  The practical effect of the stay in this Action will ultimately

4  promote judicial efficiency, lessen the burden on the parties, and will not

5  cause any prejudice to the parties involved.

6  ## C.  CONCLUSION

7  Accordingly, Doctor Defendants move this Court to stay all proceedings

8  relating to the instant Action pending the resolution of the MDL Motion.

9

10  Dated:  December 10, 2004.

11  PILLSBURY WINTHROP LLP
12  William F. Abrams
     Thomas F. Chaffin
13  Chang H. Kim
     2475 Hanover Street
14  Palo Alto, CA 94304-1114

15



16  By

17  Attorneys for Defendants and
     Counterclaimants
18  Monica Aszterbaum, M.D., Andrew
     Cassidenti, M.D., Eunice U. Lee, M.D.,
19  Carla Wells, M.D., Anita York, M.D.,
     Bruce A. Hagadorn, M.D., Rajasree T.
20  Seshadri, M.D., and Arthur Goldstein,
     M.D.

21

22

23

24

25

26

27

28