# EXHIBIT 16

File: 10T5PHAR.V1      CondenseIt™      Tuesday, October 5, 2004

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
 2            IN AND FOR THE DISTRICT OF DELAWARE
 3                          - - -
 4   PHARMASTEM THERAPEUTICS, INC.,  :  CIVIL ACTION
 5        Plaintiff,                 :
 6             v.                    :
 7   VIACELL, INC., CRYO-CELL        :
     INTERNATIONAL, INC., CORCELL,   :
 8   INC., STEMCYTE, INC., CBR       :
     SYSTEMS, INC., f/k/a CORD BLOOD :
 9   REGISTRY, INC., BIRTHCELLS      :
     TECHNOLOGY, INC., NUSTEM        :
10   TECHNOLOGIES, INC., and         :
     BIO-CELL, INC.,                 :
11                                   :  NO. 02-148 (GMS)
         Defendants.                 :
12                          - - -
13                  Wilmington, Delaware
             Tuesday, September 5, 2004 at 3:05 p.m.
14                TELEPHONE CONFERENCE
15                          - - -
16   BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.
17                          - - -
     APPEARANCES:
18
19        POTTER, ANDERSON & CORROON
          BY: PHILIP A. ROVNER, ESQ.
20
              -and-
21
          PERKINS COIE, LLP
22        BY: PAUL J. ANDRE, ESQ.
              (Menlo Park, California)
23
                   Counsel for Plaintiff
24
25                                 Brian P. Gaffigan
```

Page 2

```
 1   APPEARANCES: (Continued)
 2
          RICHARDS LAYTON & FINGER
 3        BY: JEFFREY L. MOYER, ESQ.
 4            -and-
 5        GOODWIN PROCTER, LLP
          BY: JOHN C. ENGLANDER, ESQ.,
 6            PAUL WARE, ESQ., and
              ELAINE HERRMANN BLAIS, ESQ.
 7            (Boston, Massachusetts)
 8                 Counsel for ViaCell
 9
          MORRIS JAMES HITCHENS & WILLIAMS, LLP
10        BY: RICHARD D. KIRK, ESQ.
11            -and-
12        PILLSBURY WINTHROP, LLP
          BY: THOMAS F. CHAFFIN, ESQ., and
13            WILLIAM F. ABRAMS, ESQ.
              (San Diego, California)
14
                   Counsel for CBR Systems, Inc.
15                 f/k/a Cord Blood Registry, Inc.
16
          DILLSWORTH PAXSON, LLP
17        BY: JAMES J. RODGERS, ESQ., and
              EVELYN H. McCONATHY, ESQ.
18            (Philadelphia, Pennsylvania)
19                 Counsel for CorCell, Inc. and
                   BirthCells
20
21
22
23
24
25
```

Page 3

```
 1
 2
 3                      - oOo -
 4                  P R O C E E D I N G S
 5        (REPORTER'S NOTE: The following telephone
 6   conference was held in chambers, beginning at 3:05 p.m.)
 7        THE COURT: Good afternoon, counsel.
 8        (Attorneys respond "good afternoon, your
 9   Honor.")
10        THE COURT: Counsel, who is on the line for the
11   defendants today?
12        MR. MOYER: Your Honor, it's Jeff Moyer locally
13   for ViaCell. I also have on the line with me John Englander,
14   Paul Ware and Elaine Blais.
15        THE COURT: Good afternoon.
16        (Attorneys respond "good afternoon, your
17   Honor.")
18        THE COURT: For Pharmastem.
19        MR. ROVNER: Your Honor, it's Phil Rovner. With
20   me is Paul Andre.
21        MR. RODGERS: Your Honor, for additional
22   defendants CorCell and BirthCells, Jay Rodgers here with
23   Evelyn McConathy.
24        MR. KIRK: And Dick Kirk for CBR Systems and my
25   colleagues William Abrams and Tom Chaffin.
```

Page 4

```
 1        THE COURT: I apologize. I didn't mean to
 2   overlook anyone.
 3        MR. KIRK: I should have spoken up.
 4        THE COURT: All right. Did we get all the
 5   defendants?
 6        Okay. Good afternoon to you, and good afternoon,
 7   Mr. Andre.
 8        MR. ANDRE: Good afternoon, your Honor.
 9        THE COURT: I think this call had previously
10   been set up before I received the October 4 letter from the
11   defendants; is that correct?
12        (Attorneys respond "that is correct, your
13   Honor.")
14        THE COURT: And I take it that the plaintiff has
15   not as yet had an opportunity to respond to that letter but
16   you've seen it; is that correct?
17        MR. ANDRE: That's correct, your Honor.
18        THE COURT: Okay. There are a couple of things
19   that I think we probably need to try to accomplish here
20   today. We're going to start out with the October 4 letter
21   and the issues raised in that letter. So I'm going to give
22   whomever for the defendants is going to address those issues
23   a brief opportunity to say what you want to say and to
24   request the relief you want to request and then I'm going to
25   hear from Mr. Andre.
```

File: 10T5PHAR.V1    CondenseIt™    Tuesday, October 5, 2004

### Page 5

1      MR. ENGLANDER: Your Honor, this is John
2  Englander. I will try to do it briefly because I think the
3  Court is familiar with the issues surrounding this which
4  now date back to the summer. And by "the issues," I think
5  what I'm talking about is actions by PharmaStem that are
6  directed at obstetricians as opposed to at the defendants
7  in this case.
8      As the Court is aware, the first of those
9  communications occurred in June which led to an injunction
10  from the Court and specific finding from the Court that the
11  earliest letter at least was false and misleading. And then
12  as to the subsequent letter to obstetricians dated August
13  2nd, and your Honor had a hearing on that on August 6th at
14  which you indicated that you were not inclined, at that
15  point, to find that the August 2nd letter was contemptuous
16  but invited essentially us to suggest a modification of
17  the Court's order to try to address what certainly could
18  be viewed in our view as misleading statements about the
19  potential liability of obstetricians under these patents.
20  And we did that, your Honor. And I think what happened then,
21  the Court directed itself to getting out the orders on the
22  post-trial motions and so what is pending in front of you
23  right now is our proposed modified order of August 6th.
24      What our letter indicates, of course, is that
25  the communications directly from PharmaStem to obstetricians

### Page 6

1  did not stop and most significantly is that the proposed
2  amnesty agreement and the accompanying letter from Mr. Didier,
3  that went out somewhere after August 20th, your Honor. And
4  that amnesty agreement is, has had, and continued to have,
5  the same kind of effect on the industry as the prior
6  communications, which means there are numerous obstetricians
7  who are refusing to do business with the four defendants
8  in this case. There are numerous obstetricians who have
9  refused to collect blood for patients at birth as a result of
10  PharmaStem's actions, and there are numerous obstetricians
11  and indeed entire hospitals that are refusing to collect cord
12  blood at all because they are throwing up their hands over
13  the situation. They're just receiving so much information
14  that they feel the easier thing for them to do is just to do
15  nothing, because then at least they won't be threatened with
16  liability from PharmaStem.
17      Your Honor, as we outlined in the letter
18  yesterday, we believe that this amnesty agreement, which
19  was indiscriminately sent to we believe over 25,000
20  obstetricians, is patent misuse and anticompetitive conduct,
21  clearly. The reason for that is because there is no good
22  faith basis for Pharmastem to believe that those obstetri-
23  cians are engaged in infringement of any of Pharmastem's
24  patents. And the amnesty agreement is absolutely clear in
25  saying we believe that the simple collection of cord blood is

### Page 7

1  enough to cause liability and the amnesty agreement asks for
2  the obstetricians to sign on and agree they will not engage
3  in the simple collection of cord blood for these defendants.
4      So essentially what Pharmastem did is it
5  threatened these obstetricians repeatedly and then it said if
6  you don't want us to sue you, just agree not to do business
7  with these defendants. And they're having some success at
8  that, your Honor. Pharmastem has stated in several documents
9  that, quote, hundreds of obstetricians have signed these
10  amnesty agreements. Of course, the defendants are aware of
11  some of those through refusals of the doctors to do business
12  with us and we believe that this is an extraordinary
13  situation that requires extraordinary relief.
14      Now, as we indicate in the letter, what we, I'm
15  going to say, have done; but I believe the complaint itself
16  has just -- is just being filed right now; we instituted a
17  new lawsuit under the antitrust laws and also under state
18  deceptive trade laws.
19      THE COURT: Let me ask a question about that.
20  The defendants contend that there is a need for these matters
21  to be addressed quickly, I would assume.
22      MR. ENGLANDER: That is correct, your Honor.
23      THE COURT: And I wondered when I read that
24  sentence in the October 4 letter about whether the most
25  expeditious way -- and I'm sure the plaintiff is interested

### Page 8

1  in having these matters addressed quickly as well. Would
2  that be a safe assumption, Mr. Andre?
3      MR. ANDRE: Yes, that's correct, your Honor.
4      THE COURT: So I wonder whether a new action
5  made the most sense. I am not attempting in any way to tell
6  anyone how to practice law but it seems to me what you are
7  saying, Mr. Englander, is that this new action is going to
8  address the very issues that have already been raised before
9  the Court in the motion for the issuance of a preliminary
10  injunction.
11      MR. ENGLANDER: Your Honor, let me explain why
12  we did it. And I will say at the outset, if the Court is
13  comfortable addressing these issues in the context of the
14  contempt motions and the motions already filed, that would be
15  perfectly fine.
16      THE COURT: The Court is comfortable addressing
17  these matters within the latter context as long as both --
18  as long as the plaintiff, in this case, would be the party
19  who would be perhaps permitted to complain, should I proceed
20  in this fashion. But my view is that what we want to do is
21  make sure everyone has notice of the issues that are to be
22  brought before the Court and an adequate opportunity to
23  respond, both in writing and orally. So that would be the
24  principal concern. Procedurally, I don't think there is any
25  prohibition to the Court taking up these additional matters

Telephone Conference - 3:05 p.m.                Page 5 - Page 8

Page 9

1  as supplements to the initial motion.
2       MR. ENGLANDER: Your Honor, I agree with the
3  Court but I want to just add one thing.
4       THE COURT: Okay.
5       MR. ENGLANDER: which is that there have been
6  arguments made which the Court is aware of to the effect some
7  of the patents that are involved in these communications are
8  not before the Court.
9       THE COURT: And that is true. That is true.
10      MR. ENGLANDER: And other issues. And the reason
11 for filing the separate complaint is because it seemed to us
12 that under those circumstances, there could be no objection
13 to the Court having before it all the issues and all of the
14 available potential reliefs that we were seeking.
15      THE COURT: Mr. Englander, that perhaps is reason
16 enough to go forward with, and file a new action, but we can
17 talk about that a little more.
18      I cut you off. Go ahead.
19      MR. ENGLANDER: I finished. I just wanted
20 to indicate to the Court to the extent the plaintiffs are
21 comfortable and aren't going to raise those kind of issues
22 here, we're happy to address it in the context of further
23 requests for injunctive relief or contempt proceedings, both
24 of which we think are appropriate here.
25      THE COURT: Mr. Andre.

Page 10

1       MR. ANDRE: Your Honor, let me kind of go back
2  and do a little bit of, go over the procedural history just
3  one more time real quickly.
4       THE COURT: Sure.
5       MR. ANDRE: Based on the first letter that was
6  sent by Pharmastem, the defendants moved for and obtained a
7  temporary restraining order and a preliminary injunction in
8  this case. That was to terminate upon the Court's deciding
9  post-trial motions. That preliminary injunction and TRO are
10 now expired.
11      The complaints here they're mentioning in their
12 letter regarding the amnesty agreement involve three patents
13 that are not before the Court. Two of these patents have
14 been asserted against each of the defendants in a separate
15 action in California, Massachusetts, Pennsylvania and
16 Florida. So to the extent they have any grievance regarding
17 what is going on with those patents I believe is best left to
18 have those courts handle that.
19      THE COURT: Well, this Court is intimately
20 familiar. It has had it now, as you point out in the
21 plaintiff's motion for the issuance of a preliminary
22 injunction, is very familiar with the background involved
23 here, with the particular issues that are in dispute. The
24 Court, after all, has had a jury trial and presided over
25 a jury trial on the matter and has had the opportunity to

Page 11

1  peruse and investigate and consider in-depth post-verdict
2  motions and the record in support of those motions. So
3  to the extent that these other patents might be placed
4  before this court improperly, and in so doing, place those
5  patents properly within this court's authority for further
6  consideration -- after all, as I understand it, they raise,
7  if not identical issues, at least very, very similar issues
8  to the '681 and '553 patents.
9       MR. ENGLANDER: That is correct, your Honor.
10      MR. ANDRE: We would disagree.
11      THE COURT: I know there has been a disagreement
12 about that but herein may lie the wisdom in the defendants'
13 action in bringing another action. And that is to tee that
14 issue, among others, up for the Court so that the Court
15 can make an independent inquiry and review and make a
16 determination as to whether these matters are in fact the
17 same. So I hear you, Mr. Andre, but it appears that matter
18 that you, or at least that point that you make is about to
19 be effectively rebutted by the new action that is about to be
20 filed, if it hasn't already been filed.
21      MR. ANDRE: I agree, your Honor, procedurally if
22 they filed a new action in Delaware, then obviously it would
23 be teed up for this court. We can proceed with our various
24 motions and our written responses accordingly.
25      THE COURT: Right.

Page 12

1       MR. ANDRE: I mean obviously one of the issues
2  that comes up is that even as Mr. Englander just admitted,
3  that the amnesty agreements are directed to obstetricians,
4  not the defendants. That there is obviously standing issues
5  and things that we will bring to the Court's attention at the
6  proper time.
7       THE COURT: Right.
8       MR. ANDRE: As far as --
9       THE COURT: Let me just add, though, for every
10 one's consideration an additional party in interest here, and
11 that is that is the Court itself insofar as it would deem it
12 appropriate to take whatever action it deemed appropriate to
13 protect its process. That issue is very much alive, or that
14 consideration should be very much alive in the minds of all
15 parties.
16      Go ahead, Mr. Andre.
17      MR. ANDRE: Yes. I was just going to say that
18 the issues that they bring forward, the problem they have
19 with the amnesty agreement is one I believe that is patent
20 misuse which obviously are the patents involved in these
21 other cases and jurisdictions around the country and the
22 anticompetitive effects, which obviously if they would bring
23 that forward in their complaint, we will address that at that
24 time. I think at this point in the proceedings, it's just
25 not ripe for a determination as we sit here today.

Page 13

1   THE COURT: I agree with that. You mean an
2   ultimate determination on the relief requested?
3   MR. ANDRE: Yes, your Honor.
4   THE COURT: On the preliminary injunction.
5   MR. ANDRE: I'm not sure what they're looking
6   for. It seems like they're looking for some type of
7   preliminary injunction from us entering into contracts with
8   third parties that don't involve them.
9   THE COURT: No. Of course, Mr. Englander can
10  speak for himself but what I understood from the October 4
11  letter, Mr. Andre, is that they wanted to have this status
12  conference address their concerns in the form of setting up a
13  schedule to have this matter ripened into an evidentiary
14  hearing before the Court on both parties' various motions and
15  complaints.
16  Am I misstating you, Mr. Englander?
17  MR. ENGLANDER: No. I think, your Honor, that is
18  fundamentally what we would like is at the Court's earliest
19  convenience, we're going to get a motion on file that is
20  going to lay this out. And we believe it will be on file
21  within 48 hours. I'm reasonably certain of that. We would
22  like the Court, at its earliest convenience, to take that up
23  in whatever way the Court would like to do it.
24  THE COURT: Well, the Court would like to handle
25  it as quickly as possible but it may not be possible to handle

Page 14

1   it as quickly as the Court had envisioned. I had actually
2   looked at the schedule, anticipating the possibility of
3   expedited submissions and was considering a hearing date for
4   both sides' motions, depending upon how much time the parties
5   advised the Court they thought would be necessary to take
6   evidence of November the 1st, but I wonder if we're going to
7   be able to move that expeditiously, given Mr. Andre's stated
8   concerns about the patents that are not currently before
9   the Court and whether they do indeed raise different and
10  distinct issues that have not previously been addressed.
11  MR. ENGLANDER: Your Honor, we don't believe they
12  do. And we think if we can get the motions for preliminary
13  injunction on file and the Court can have an opportunity to
14  read it, you will rethink the conclusion. The claim language
15  is so similar and the issues really come down to what kind
16  of liability could an obstetrician or medical provider have
17  under these patents? Because it's certainly not liability
18  merely for collecting cord blood. That is the fundamental
19  problem with the amnesty agreement is that it is attempting
20  to get, through coerced contracts, something that could not
21  possibly be obtained even after judgment in a patent suit
22  against these people.
23  MR. ANDRE: Your Honor, I mean obviously that is
24  something that is being litigated currently in several
25  different courts. They're being sued for patent infringement

Page 15

1   and for Mr. Englander to act as judge and jury today is
2   extremely premature.
3   As far as the motions that we filed yesterday
4   regarding the preliminary injunction on the defendants and
5   the judgments, the 54(b) and the 1292 motions, I think that
6   can be expedited, but as far as going into a different realm,
7   that was not part of the original case, not part of the trial
8   and trying to get a judgment as to whether obstetricians are
9   liable or not is something that is extremely premature. In
10  fact, that is the issue, what brought this whole ball rolling
11  was that there appeared to be -- the Court found Mr. Didier's
12  statement in the original letter implied this Court made a
13  finding regarding obstetricians when in fact the Court had
14  not made a finding regarding obstetrician liability.
15  THE COURT: Mr. Andre, I think the plaintiff
16  should have a full opportunity to resist the defendants'
17  efforts to have the Court consider, if that is your intent,
18  the additional patents that were not part of the original
19  lawsuit here. Barring that, if the plaintiff is truly
20  interested in moving this matter expeditiously, it may be
21  the case that the parties can agree. I don't hold out much
22  hope for that but it may.
23  MR. WARE: Your Honor, this is Paul Ware.
24  THE COURT: Yes.
25  MR. WARE: I think November 1 is realistic and

Page 16

1   the Court's instinct that you have jurisdiction over all
2   these issues even if, to some extent, they involve other
3   patents is absolutely correct because you do have inherent
4   supervisory power not only over the process but over the
5   judgments, the enforcement of the judgments that have been
6   entered. So I think there is every reason to believe that
7   the Court can resolve any dispute between the parties as
8   regards to jurisdiction insofar as it touches these other
9   three patents.
10  Secondly, your Honor, we probably will -- we
11  definitely will be making an effort to consolidate these
12  cases that are elsewhere in the United States in Delaware
13  under an MDL procedure. So one way or another, we're
14  certainly going to seek to consolidate all of these issues
15  before the Court in Delaware.
16  THE COURT: You know, Mr. Ware, they say be
17  careful what you wish for. I may have gotten myself --
18  MR. WARE: Well, you may have, your Honor.
19  THE COURT: Go ahead.
20  MR. WARE: As you pointed out with such grace,
21  you have, for better or worse, become familiar with all of
22  this and have demonstrated a facility with it and I think
23  it's in everybody's interest we stay before you.
24  THE COURT: Well, I am very much interested in,
25  if we can, handling this in some way on the time line that I

Page 17

1  have suggested ultimately with the goal being convening a
2  hearing beginning the 1st day of November, or some time
3  thereabouts.
4         MR. WARE: We will meet that schedule, your
5  Honor.
6         MR. ABRAMS: Your Honor, this is Bill Abrams. I
7  have a Federal Circuit argument on November 2. If we could
8  perhaps move it to later that week, 4 or 5 November, we would
9  be grateful.
10        THE COURT: Well, why don't we do this? It would
11 be most helpful I think if the parties could, after this
12 conference, conduct a meet and confer, agree on what you can,
13 disagree on those things that you must, and submit to me a
14 proposed schedule for handling these matters on the time line
15 that I have suggested. Does that make sense to both sides?
16        MR. ABRAMS: That would be fine, your Honor.
17        THE COURT: Mr. Englander? Mr. Ware?
18        MR. WARE: Yes, your Honor.
19        MR. ENGLANDER: That's fine with us, your Honor.
20        THE COURT: I would suggest that would be helpful
21 to have that early next week -- okay? -- into the court.
22 If need be, and it may well be the case, I'll get you back
23 on the phone so that we can hash out any differences and the
24 Court can make any rulings necessary, process rulings
25 necessary -- not, Mr. Andre, any substantive rulings --

Page 18

1         MR. ANDRE: Okay.
2         THE COURT: -- necessary to move the matter
3  forward fairly, a matter that will be fair to both sides.
4  That is, give both sides the opportunity to be fully heard
5  in writing and orally.
6         I do have one concern I wanted to share with
7  everyone and the comment is directed, though, to the
8  plaintiff. You know, of course, I don't sit on the Supreme
9  Court of California where the license I suspect for at least
10 some of the lawyers on this call is governed, the license
11 to practice law. But the letter on Pharmastem stationery
12 that was issued under the signature of Mr. Didier is most
13 troubling to me as a judge. Because while it purports to
14 be the letter of a layman and not a member of the bar, I do
15 believe -- you can correct me if I'm wrong, Mr. Andre -- it
16 is directed to a party in a lawsuit that you are prosecuting;
17 is that correct? Dr. Wells.
18        MR. ANDRE: It is offered to Dr. Wells. Yes,
19 your Honor.
20        THE COURT: Was this communicated through his
21 lawyers or directly to him?
22        MR. ANDRE: It was directed to the party, your
23 Honor.
24        THE COURT: Well, this letter was not offered
25 by a layperson. This letter was clearly authored by an

Page 19

1  attorney. And I'm not making any accusations as to who might
2  have authored it but it strikes me as problematic.
3         MR. ANDRE: Your Honor.
4         THE COURT: This is a represented party. I
5  guess, what is it, Rule 4.2? I don't know the rule off
6  top of my head but the model rules. I think it's 4.2 but
7  go ahead.
8         MR. ANDRE: Your Honor, I can assure you that
9  Mr. Didier has been actively involved in the litigation in
10 the Delaware matter. I can assure you that the letter was
11 authored by Mr. Didier.
12        THE COURT: Okay.
13        MR. ANDRE: And Mr. Didier does have legal
14 training in Luxembourg.
15        THE COURT: I wanted to share that word of
16 concern and would expect that as Officers of the Court,
17 everyone on this call would abide by the rules of ethics
18 and procedure but certainly the rules of ethics and be very
19 careful. I know there is a lot at stake here, but I think
20 that is enough said on that subject.
21        MR. WARE: Your Honor, in that regard -- Paul
22 Ware again.
23        Can we have an agreement until this hearing on
24 November 1, that there will be no more communications?
25 Just an agreement among counsel and the Court that until the

Page 20

1  Court has an opportunity to look at these issues, the parties
2  ought to be wary of sending out further communications and
3  exacerbating the communications, including regarding amnesty
4  agreements?
5         THE COURT: I do tend to share the view, and I
6  did go on the website and am concerned about the statement,
7  which is only partially true, certainly, the statement that
8  the jury, on October 29th -- I'm paraphrasing -- found what
9  it found and that it made may the findings it had as to the
10 '681 and '553 patent is accurate. But certainly there is
11 a subsequent development of some import I would think to
12 somebody, particularly the parties who might be reading this
13 information, that the Court has issued rulings subsequent to
14 that which vitiates to some extent the jury's finding.
15        MR. ANDRE: Your Honor, when we got this letter
16 yesterday afternoon, I went on the website myself. We have
17 one employee. Our website is not updated regularly. It will
18 be fixed as soon as possible. So it's not something that we
19 go and we have a webmaster who does this on a daily basis.
20        THE COURT: I do appreciate that.
21        MR. WARE: We asked to have it withdrawn and that
22 has been refused as we understand.
23        MR. ANDRE: Your Honor, that section has not been
24 addressed, but anyway, let me point one thing to the Court's
25 attention.

Page 21

1  THE COURT: Sure.
2  MR. ANDRE: Regarding the Court's ruling, there
3  have been a series of press releases by all four defendants.
4  I'll give you an example. On the ViaCell press release that
5  went out after the Court ruled, it said a federal court in
6  Delaware overturned in its entirety an earlier judgment
7  against ViaCell, which I believe is an incorrect statement.
8  In fact, the Court upheld judgments, findings of patents
9  being valid and enforceable.
10  MR. ENGLANDER: Actually, the statement is
11  accurate. The judgment of the Court was overturned in its
12  entirety.
13  THE COURT: You know, I think Mr. Ware's point
14  is well made. I'll let you continue in a moment, Mr. Andre.
15  It would be helpful if all parties, as they say, moving
16  forward, keep your powder dry and let the process work itself
17  through. Let's give the parties involved the opportunity to
18  help the Court in a reasoned and dispassionate matter, work
19  through to some end point whereby the upper court, the
20  Federal Circuit, can weigh in and, to the extent that it is
21  able, ultimately put these matters to rest.
22  But the letters like Exhibit B, which, by the
23  way, Mr. Andre, makes a statement at page two in the second
24  paragraph that is similar to that which is found on the
25  website insofar as it doesn't contain full disclosure, full

Page 22

1  information. It points out that the Delaware jury found a
2  finding of willful patent infringement, patent validity and
3  patent enforceability were made against these four cord
4  blood banks, including CBR, and doesn't again fully inform
5  the recipient of these letters that further additional things
6  happened.
7  MR. ANDRE: Your Honor, I'm just looking right
8  now. I'm not sure what date the Court came down with this
9  order.
10  MR. ROVNER: Your Honor, this is Phil Rovner. I
11  can tell you the letter that is attached as Exhibit B is
12  dated September 14.
13  THE COURT: And the order came out on the 15th.
14  You're right. So it may be helpful to have a follow-up
15  mailing.
16  MR. ANDRE: And that's fine, your Honor. In our
17  press release, we fully informed the public what happened.
18  THE COURT: Okay.
19  MR. ANDRE: One issue we're having like with some
20  of the other defendants -- and I'm reading from CorCell.
21  Based on the Court's ruling on September 15th, it says the
22  clarification of this ruling is that obstetricians and the
23  other healthcare providers who simply collect umbilical cord
24  blood for cryopreservation cannot be liable for contributory
25  infringement under -- and this is a quote -- any Pharmastem

Page 23

1  patent.
2  Now, there are three patents that are not
3  before the Court and now they're telling obstetricians and
4  healthcare providers that this Court made a determination on
5  those three patents as well.
6  THE COURT: Yes.
7  MR. RODGERS: Your Honor, Jim Rodgers. With all
8  due respect, the statement is that there is an implication
9  and that is not saying that the Court made a finding in that
10  direction.
11  MR. WARE: But in any event, the broader question
12  is can we have an agreement to adopt the Court's suggestion
13  that we, quote, keep our powder dry? What is wrong with
14  that?
15  MR. ANDRE: We have no problem with that. We
16  have, actually. At this point, we instituted the amnesty
17  agreement, your Honor, because we were filing lawsuits
18  against obstetricians. Most of them contacted us and said
19  why didn't you just call me? I'll sign this settlement. We
20  were suing people who had no interest in fighting this out
21  and so they signed settlement agreements. So we instituted
22  the amnesty program to allow physicians to short-circuit the
23  whole process.
24  THE COURT: Understood. But at least you open
25  yourself up to the contention that you are engaging in an

Page 24

1  anticompetitive practice. It's a colorable claim. I don't
2  purport at this point to be fully informed on the substantive
3  aspects of all antitrust law but it certainly I believe is a
4  colorable claim. Why do that? I mean I know the answer to
5  that. And I don't accuse you of insubordinate behavior. I'm
6  not trying to suggest that I have drawn any conclusions one
7  way or the other about whether the activity is anticompetitive
8  but certainly at least you leave yourselves open to that.
9  MR. ANDRE: We understand, your Honor. It's
10  something that obviously the defendants can seek the remedies
11  as they see fit and we will defend them.
12  THE COURT: But an informal agreement, as was
13  just suggested by counsel, to that extent; and you should, I
14  would imagine, be able to control your clients, and if you
15  can't, perhaps there are other forces that can; would make
16  sense. I thought I heard you say you agree with that, Mr.
17  Andre.
18  MR. ANDRE: Your Honor, at this point we have no
19  plans to increase or further any activity regarding amnesty
20  program. It's out there. People know about it. We had a
21  duty to inform them of it and we are resting on that program
22  as it stands right now.
23  THE COURT: And similarly, the defendants should
24  refrain, if you are going to have an agreement, from any
25  further public disseminations.

### Page 25

1  MR. WARE: I think that we will agree with that,
2  your Honor. I didn't hear Mr. Andre say he will in fact
3  refrain. As I understand it, there is yet another ad about
4  to go out in a magazine called e-pregnancy. I mean I think
5  we ought to have an agreement for a full stop until the Court
6  can consider the issues. That's what we're prepared to do.
7      THE COURT: What about this ad, Mr. Andre?
8      MR. ANDRE: This is the first I've heard about
9  it, your Honor. Obviously, my clients run their business and
10 we handle the legal aspects of it but I don't know what Mr.
11 Ware is referring to.
12     THE COURT: Well, perhaps --
13     MR. ANDRE: I'm not saying it's not true. I'm
14 saying I don't know anything about it.
15     THE COURT: Perhaps you can investigate today and
16 advise your clients that it probably would be ill advised,
17 given this conversation today and given your representations,
18 to proceed forward with that ad.
19     MR. ANDRE: If the ad is just merely a listing,
20 we do have some contractual obligations to our 16 licensees.
21 Just listing these are the 16 licensees, these are the four
22 not licensed, I don't know if that would be offensive. I
23 can't imagine what would be offensive about it.
24     THE COURT: It may be completely innocuous and
25 perhaps once you do your investigation, you can dial Mr. Ware

### Page 26

1  or Mr. Englander up and maybe fax them a copy of the ad.
2  And it may be that there is no issue but I would expect as
3  Officers of the Court that you gentlemen could agree that
4  where there is clearly perhaps a contentions issue that is
5  going to be raised by the ad, just put it on hold. This
6  process is not going to last forever. I know it may seem
7  that way to your clients, but --
8      MR. ANDRE: Well, your Honor, obviously you can
9  imagine the issue my clients have. They are the rightful
10 patent holders.
11     THE COURT: I agree with that, to the extent that
12 I can, without having that statement just now misinterpreted
13 perhaps, but as pointed out earlier, your clients perhaps
14 open themselves up to additional or to liability that they
15 didn't intend.
16     MR. ANDRE: I understand, your Honor. It's
17 something that obviously we will address that. Our issue
18 is I guess that as we sit here today the patents, the '681
19 patent in particular is about to expire in three and-a-half
20 years. Usually, patents have a 17 year life-span. These
21 defendants have been very successful in putting us through
22 reexamination. Now, they are very successful on running up
23 the clock and now having all these procedural aspects going
24 on is very successful on their part to do what they can to
25 run the clock out on the patent. We have no remedies to get

### Page 27

1  it extended anyway and our equitable relief remedies will
2  never be addressed.
3      MR. WARE: Your Honor, that is just hypocrisy.
4  They deliberately didn't seek an injunction two years ago so
5  the industry will be built by someone else at someone else's
6  cost. This is a case about money and if, at the end of the
7  day, the defendants have to pay, they'll pay. So that's just
8  hypocrisy.
9      MR. ANDRE: It's not hypocrisy, your Honor.
10     MR. WARE: It is hypocrisy.
11     THE COURT: Let's do this, gentlemen. We'll
12 agree to disagree on that point. Mr. Andre, hold on a
13 second. We'll agree to disagree on that point. And if you
14 would, please, did I understand you to accede to the Court's
15 request they were going to investigate this ad that Mr. Ware
16 has just mentioned and then determine its contents and then
17 communicate with him?
18     MR. ANDRE: That is correct, your Honor.
19     THE COURT: All right.
20     MR. ANDRE: And Paul Ware, where is the ad being
21 run?
22     MR. WARE: Well, our understanding is it has been
23 rejected once by the publication but the publication's name
24 is e-pregnancy and it's left -- it's a leave-behind in
25 doctor's offices.

### Page 28

1      MR. ANDRE: What is that? I don't understand a
2  leave-behind.
3      MS. BLAIS: It's a magazine of expectant mothers.
4  It's a magazine I know well from having sat, having the
5  pleasure of sitting in the obstetrician's office waiting for
6  my appointment. It's a magazine that sits there, that every
7  expectant mother can pick up and read.
8      MR. ANDRE: Got it.
9      THE COURT: Who is that?
10     MS. BLAIS: This is Elaine Blair for ViaCell.
11     THE COURT: All right.
12     MR. ANDRE: It's in a magazine called Expectant
13 Mothers?
14     MS. BLAIS: E-pregnancy.
15     THE COURT: Thank you, counsel.
16     MR. ANDRE: I'll look into it, your Honor.
17     THE COURT: Thank you very much, Mr. Andre.
18 I would like to have the stipulated agreement or
19 lack thereof in my office by the close of business on Monday;
20 okay?
21     MR. ANDRE: Okay, your Honor.
22     THE COURT: No, I'm sorry. Monday is a holiday.
23 It's Columbus Day. It may not be for you, ladies and
24 gentlemen.
25     MR. ANDRE: No, unfortunately.

Page 29

1  THE COURT: But the courts will be closed.
2  Tuesday will be fine. Is there anything else?
3       MR. ANDRE: Stipulation regarding this ad?
4       THE COURT: No, regarding going forward to a
5  hearing on November 1 or thereabouts.
6       MR. ANDRE: Okay.
7       MR. ENGLANDER: So what are you looking for, your
8  Honor? As much as we can agree on in terms of a schedule
9  for briefing and a hearing on November 1 or thereabouts?
10      THE COURT: Right. And I would suggest on both
11 parties' motions, Mr. Andre, you have filed a motion for the
12 issuance of a preliminary injunction, have you not?
13      MR. ANDRE: That is correct.
14      THE COURT: As have the defendants. It is my
15 hope that counsel will be able to agree to bring all of the
16 patents that are the subject of the anticipated new action
17 by agreement before the Court and by way of some form of
18 supplementation of the initial motion for preliminary
19 injunction filed by the defendants.
20      MR. ENGLANDER: That's what we intend to do, your
21 Honor.
22      THE COURT: Counsel, thank you.
23      (The attorneys respond, "Thank you, your Honor.")
24      (Telephone conference ends at 3:42 p.m.)
25

File: 10T5PHAR.V1     CondenseIt™     '553 - consolidate

| Term | Refs |
|---|---|
| '553 [2] | 11:8  20:10 |
| '681 [3] | 11:8  20:10  26:18 |
| -and [3] | 1:20  2:4  2:11 |
| 02-148 [1] | 1:11 |
| 05 [2] | 1:13  3:6 |
| 1 [4] | 15:25  19:24  29:5  29:9 |
| 1292 [1] | 15:5 |
| 14 [1] | 22:12 |
| 15th [2] | 22:13  22:21 |
| 16 [2] | 25:20  25:21 |
| 17 [1] | 26:20 |
| 1st [2] | 14:6  17:2 |
| 2 [1] | 17:7 |
| 2004 [1] | 1:13 |
| 20th [1] | 6:3 |
| 25,000 [1] | 6:19 |
| 29th [1] | 20:8 |
| 2nd [2] | 5:13  5:15 |
| 3 [3] | 1:13  3:6  29:24 |
| 4 [5] | 4:10  4:20  7:24  13:10  17:8 |
| 4.2 [2] | 19:5  19:6 |
| 42 [1] | 29:24 |
| 48 [1] | 13:21 |
| 5 [2] | 1:13  17:8 |
| 54 [1] | 15:5 |
| 6th [2] | 5:13  5:23 |
| abide [1] | 19:17 |
| able [4] | 14:7  21:21  24:14  29:15 |
| Abrams [5] | 2:13  3:25  17:6  17:6  17:16 |
| absolutely [2] | 6:24  16:3 |
| accede [1] | 27:14 |
| accompanying [1] | 6:2 |
| accomplish [1] | 4:19 |
| accordingly [1] | 11:24 |
| accurate [2] | 20:10  21:11 |
| accusations [1] | 19:1 |
| accuse [1] | 24:5 |
| act [1] | 15:1 |
| action [11] | 1:4  8:4  8:7  9:16  10:15  11:13  11:13  11:19  11:22  12:12  29:16 |
| actions [2] | 5:5  6:10 |
| actively [1] | 19:9 |
| activity [2] | 24:7  24:19 |
| ad [9] | 25:3  25:7  25:18  25:19  26:1  26:5  27:15  27:20  29:3 |
| add [2] | 9:3  12:9 |
| additional [6] | 3:21  8:25  12:10  15:18  22:5  26:14 |
| address [7] | 4:22  5:17  8:8  9:22  12:23  13:12  26:17 |
| addressed [5] | 7:21  8:1  14:10  20:24  27:2 |
| addressing [2] | 8:13  8:16 |
| adequate [1] | 8:22 |
| admitted [1] | 12:2 |
| adopt [1] | 23:12 |
| advise [1] | 25:16 |
| advised [2] | 14:5  25:16 |
| afternoon [8] | 3:7  3:8  3:15  3:16  4:6  4:6  4:8  20:16 |
| again [2] | 19:22  22:4 |
| against [5] | 10:14  14:22  21:7  22:3  23:18 |
| ago [1] | 27:4 |
| agree [15] | 7:2  7:6  9:2  11:21  13:1  15:21  17:12  24:16  25:1  26:3  26:11  27:12  27:13  29:8  29:15 |
| agreement [17] | 6:2  6:4  6:18  6:24  7:1  10:12  12:19  14:19  19:23  19:25  23:12  23:17  24:12  24:24  25:5  28:18  29:17 |
| agreements [4] | 7:10  12:3  20:4  23:21 |
| ahead [4] | 9:18  12:16  16:19  19:7 |
| alive [2] | 12:13  12:14 |
| allow [1] | 23:22 |
| amnesty [14] | 6:2  6:4  6:18  6:24  7:1  7:10  10:12  12:3  12:19  14:19  20:3  23:16  23:22  24:19 |
| among [2] | 11:14  19:25 |
| and-a-half [1] | 26:19 |
| ANDERSON [1] | 1:19 |
| Andre [65] | 1:22  3:20  4:7  4:8  4:17  4:25  8:2  8:3  9:25  10:1  10:5  11:10  11:17  11:21  12:1  12:8  12:16  12:17  13:3  13:5  13:11  14:23  15:15  17:25  18:1  18:15  18:18  18:22  19:3  19:8  19:13  20:15  20:23  21:2  21:14  21:23  22:7  22:16  22:19  23:15  24:9  24:17  24:18  25:2  25:7  25:8  25:13  25:19  26:8  26:16  27:9  27:12  27:18  27:20  28:1  28:8  28:12  28:16  28:17  28:21  28:25  29:3  29:6  29:11  29:13 |
| Andre's [1] | 14:7 |
| answer [1] | 24:4 |
| anticipated [1] | 29:16 |
| anticipating [1] | 14:2 |
| anticompetitive [4] | 6:20  12:22  24:1  24:7 |
| antitrust [2] | 7:17  24:3 |
| anyway [2] | 20:24  27:1 |
| apologize [1] | 4:1 |
| APPEARANCES [2] | 1:17  2:1 |
| appeared [1] | 15:11 |
| appointment [1] | 28:6 |
| appreciate [1] | 20:20 |
| appropriate [3] | 9:24  12:12  12:12 |
| argument [1] | 17:9 |
| arguments [1] | 9:6 |
| asks [1] | 7:1 |
| aspects [3] | 24:3  25:10  26:23 |
| asserted [1] | 10:14 |
| assume [1] | 7:21 |
| assumption [1] | 8:2 |
| assure [2] | 19:8  19:10 |
| attached [1] | 22:11 |
| attempting [2] | 8:5  14:19 |
| attention [2] | 12:5  20:25 |
| attorney [1] | 19:1 |
| attorneys [4] | 3:8  3:16  4:12  29:23 |
| August [5] | 5:12  5:13  5:15  5:23  6:3 |
| authored [3] | 18:25  19:2  19:11 |
| authority [1] | 11:5 |
| available [1] | 9:14 |
| aware [3] | 5:8  7:10  9:6 |
| b [3] | 15:5  21:22  22:11 |
| background [1] | 10:22 |
| ball [1] | 15:10 |
| banks [1] | 22:4 |
| bar [1] | 18:14 |
| Barring [1] | 15:19 |
| Based [2] | 10:5  22:21 |
| basis [2] | 6:22  20:19 |
| become [1] | 16:21 |
| beginning [2] | 3:6  17:2 |
| behavior [1] | 24:5 |
| best [1] | 10:17 |
| better [1] | 16:21 |
| between [1] | 16:7 |
| Bill [1] | 17:6 |
| BIO-CELL [1] | 1:10 |
| birth [1] | 6:9 |
| BirthCells [3] | 1:9  2:19  3:22 |
| bit [1] | 10:2 |
| Blair [1] | 28:10 |
| Blais [5] | 2:6  3:14  28:3  28:10  28:14 |
| blood [9] | 1:8  2:15  6:9  6:12  6:25  7:3  14:18  22:4  22:24 |
| Boston [1] | 2:7 |
| Brian [1] | 1:25 |
| brief [1] | 4:23 |
| briefing [1] | 29:9 |
| briefly [1] | 5:2 |
| bring [4] | 12:5  12:18  12:22  29:15 |
| bringing [1] | 11:13 |
| broader [1] | 23:11 |
| brought [2] | 8:22  15:10 |
| built [1] | 27:5 |
| business [5] | 6:7  7:6  7:11  25:9  28:19 |
| C [2] | 2:5  3:4 |
| California [4] | 1:22  2:13  10:15  18:9 |
| cannot [1] | 22:24 |
| careful [2] | 16:17  19:19 |
| case [8] | 5:7  6:8  8:18  10:8  15:7  15:21  17:22  27:6 |
| cases [2] | 12:21  16:12 |
| CBR [4] | 1:8  2:14  3:24  22:4 |
| certain [1] | 13:21 |
| certainly [8] | 5:17  14:17  16:14  19:18  20:7  20:10  24:3  24:8 |
| Chaffin [2] | 2:12  3:25 |
| chambers [1] | 3:6 |
| cians [1] | 6:23 |
| Circuit [2] | 17:7  21:20 |
| circumstances [1] | 9:12 |
| CIVIL [1] | 1:4 |
| claim [3] | 14:14  24:1  24:4 |
| clarification [1] | 22:22 |
| clear [1] | 6:24 |
| clearly [3] | 6:21  18:25  26:4 |
| clients [6] | 24:14  25:9  25:16  26:7  26:9  26:13 |
| clock [2] | 26:23  26:25 |
| close [1] | 28:19 |
| closed [1] | 29:1 |
| coerced [1] | 14:20 |
| COIE [1] | 1:21 |
| colleagues [1] | 3:25 |
| collect [3] | 6:9  6:11  22:23 |
| collecting [1] | 14:18 |
| collection [2] | 6:25  7:3 |
| colorable [2] | 24:1  24:4 |
| Columbus [1] | 28:23 |
| comfortable [3] | 8:13  8:16  9:21 |
| comment [1] | 18:7 |
| communicate [1] | 27:17 |
| communicated [1] | 18:20 |
| communications [7] | 5:9  5:25  6:6  9:7  19:24  20:2  20:3 |
| complain [1] | 8:19 |
| complaint [3] | 7:15  9:11  12:23 |
| complaints [2] | 10:11  13:15 |
| completely [1] | 25:24 |
| concern [3] | 8:24  18:6  19:16 |
| concerned [1] | 20:6 |
| concerns [2] | 13:12  14:8 |
| conclusion [1] | 14:14 |
| conclusions [1] | 24:6 |
| conduct [2] | 6:20  17:12 |
| confer [1] | 17:12 |
| conference [5] | 1:14  3:6  13:12  17:12  29:24 |
| consider [3] | 11:1  15:17  25:6 |
| consideration [3] | 11:6  12:10  12:14 |
| considering [1] | 14:3 |
| consolidate [2] | 16:11 |

| | | | | | |
|---|---|---|---|---|---|
| 16:14 | 13:23 13:24 13:24 | determination [4] | efforts [1] 15:17 | extended [1] 27:1 |
| contacted [1] 23:18 | 14:1 14:5 14:9 | 11:16 12:25 13:2 | Elaine [3] 2:6 | extent [8] 9:20 |
| contain [1] 21:25 | 14:13 15:11 15:12 | 23:4 | 3:14 28:10 | 10:16 11:3 16:2 |
| contempt [2] 8:14 | 15:13 15:15 15:17 | determine [1] 27:16 | elsewhere [1] 16:12 | 20:14 21:20 24:13 |
| 9:23 | 15:24 16:7 16:15 | development [1] | employee [1] 20:17 | 26:11 |
| contemptuous [1] | 16:16 16:19 16:24 | 20:11 | end [2] 21:19 27:6 | extraordinary [2] |
| 5:15 | 17:10 17:17 17:20 | dial [1] 25:25 | ends [1] 29:24 | 7:12 7:13 |
| contend [1] 7:20 | 17:21 17:24 18:2 | Dick [1] 3:24 | enforceability [1] | extremely [2] 15:2 |
| contention [1] 23:25 | 18:9 18:20 18:24 | Didier [5] 6:2 | 22:3 | 15:9 |
| contentions [1] 26:4 | 19:4 19:12 19:15 | 18:12 19:9 19:11 | enforceable [1] 21:9 | F [2] 2:12 2:13 |
| contents [1] 27:16 | 19:16 19:25 20:1 | 19:13 | enforcement [1] | f/k/a [2] 1:8 2:15 |
| context [3] 8:13 | 20:5 20:13 20:20 | Didier's [1] 15:11 | 16:5 | facility [1] 16:22 |
| 8:17 9:22 | 21:1 21:5 21:5 | Diego [1] 2:13 | engage [1] 7:2 | fact [5] 11:16 15:10 |
| continue [1] 21:14 | 21:8 21:11 21:13 | differences [1] 17:23 | engaged [1] 6:23 | 15:13 21:8 25:2 |
| continued [2] 2:1 | 21:18 21:19 22:8 | different [3] 14:9 | engaging [1] 23:25 | fair [1] 18:3 |
| 6:4 | 22:13 22:18 23:3 | 14:25 15:6 | Englander [25] 2:5 | fairly [1] 18:3 |
| contracts [2] 13:7 | 23:4 23:6 23:9 | DILLSWORTH [1] | 3:13 5:1 5:2 | faith [1] 6:22 |
| 14:20 | 23:24 24:12 24:23 | 2:16 | 7:22 8:7 8:11 | false [1] 5:11 |
| contractual [1] 25:20 | 25:5 25:7 25:12 | directed [6] 5:6 | 9:2 9:5 9:10 | familiar [4] 5:3 |
| contributory [1] | 25:15 25:24 26:3 | 5:21 12:3 18:7 | 9:15 9:19 11:9 | 10:20 10:22 16:21 |
| 22:24 | 26:11 27:11 27:19 | 18:16 18:22 | 12:2 13:9 13:16 | far [3] 12:8 15:3 |
| control [1] 24:14 | 28:9 28:11 28:15 | direction [1] 23:10 | 13:17 14:11 15:1 | 15:6 |
| convenience [2] | 28:17 28:22 29:1 | directly [2] 5:25 | 17:17 17:19 21:10 | fashion [1] 8:20 |
| 13:19 13:22 | 29:4 29:10 29:14 | 18:21 | 26:1 29:7 29:20 | fax [1] 26:1 |
| convening [1] 17:1 | 29:17 29:22 | disagree [4] 11:10 | entered [1] 16:6 | federal [3] 17:7 |
| conversation [1] | court's [11] 5:17 | 17:13 27:12 27:13 | entering [1] 13:7 | 21:5 21:20 |
| 25:17 | 10:8 11:5 12:5 | disagreement [1] | entire [1] 6:11 | fighting [1] 23:20 |
| copy [1] 26:1 | 13:18 16:1 20:24 | 11:11 | entirety [2] 21:6 | file [4] 9:16 13:19 |
| CorCell [4] 1:7 | 21:2 22:21 23:12 | disclosure [1] 21:25 | 21:12 | 13:20 14:13 |
| 2:19 3:22 22:20 | 27:14 | dispassionate [1] | envisioned [1] 14:1 | filed [8] 7:16 8:14 |
| cord [8] 1:8 2:15 | courts [3] 10:18 | 21:18 | equitable [1] 27:1 | 11:20 11:20 11:22 |
| 6:11 6:25 7:3 | 14:25 29:1 | dispute [2] 10:23 | ESQ [11] 1:19 | 15:3 29:11 29:19 |
| 14:18 22:3 22:23 | CRYO-CELL [1] | 16:7 | 1:22 2:3 2:5 | filing [2] 9:11 |
| cut [1] 9:18 | 1:7 | disseminations [1] | 2:6 2:6 2:10 | 23:17 |
| correct [12] 4:11 | cryopreservation [1] | 24:25 | 2:12 2:13 2:17 | finding [6] 5:10 |
| 4:12 4:16 4:17 | 22:24 | distinct [1] 14:10 | 2:17 | 15:13 15:14 20:14 |
| 7:22 8:3 11:9 | D [2] 2:10 3:4 | DISTRICT [2] 1:1 | essentially [2] 5:16 | 22:2 23:9 |
| 16:3 18:15 18:17 | daily [1] 20:19 | 1:2 | 7:4 | findings [2] 20:9 |
| 27:18 29:13 | date [3] 5:4 14:3 | doctor's [1] 27:25 | ethics [2] 19:17 | 21:8 |
| CORROON [1] 1:19 | 22:8 | doctors [1] 7:11 | 19:18 | fine [5] 8:15 17:16 |
| cost [1] 27:6 | dated [2] 5:12 | documents [1] 7:8 | Evelyn [2] 2:17 | 17:19 22:16 29:2 |
| counsel [11] 1:23 | 22:12 | doesn't [2] 21:25 | 3:23 | FINGER [1] 2:2 |
| 2:8 2:14 2:19 | deceptive [1] 7:18 | 22:4 | event [1] 23:11 | finished [1] 9:19 |
| 3:7 3:10 19:25 | deciding [1] 10:8 | done [1] 7:15 | everybody's [1] | first [3] 5:8 10:5 |
| 24:13 28:15 29:15 | deem [1] 12:11 | down [2] 14:15 | 16:23 | 25:8 |
| 29:22 | deemed [1] 12:12 | 22:8 | evidence [1] 14:6 | fit [1] 24:11 |
| country [1] 12:21 | defend [1] 24:11 | Dr [2] 18:17 18:18 | evidentiary [1] 13:13 | fixed [1] 20:18 |
| couple [1] 4:18 | defendants [24] 1:11 | drawn [1] 24:6 | exacerbating [1] | Florida [1] 10:16 |
| course [4] 5:24 | 3:11 3:22 4:5 | dry [2] 21:16 23:13 | 20:3 | follow-up [1] 22:14 |
| 7:10 13:9 18:8 | 4:11 4:22 5:6 | due [1] 23:8 | example [1] 21:4 | following [1] 3:5 |
| court [126] 1:1 | 6:7 7:3 7:7 | duty [1] 24:21 | Exhibit [2] 21:22 | forces [1] 24:15 |
| 3:7 3:10 3:15 | 7:10 7:20 10:6 | E [2] 3:4 3:4 | 22:11 | forever [1] 26:6 |
| 3:18 4:1 4:4 | 10:14 12:4 15:4 | e-pregnancy [3] | expect [2] 19:16 | form [2] 13:12 29:17 |
| 4:9 4:14 4:18 | 21:3 22:20 24:10 | 25:4 27:24 28:14 | 26:2 | forward [7] 9:16 |
| 5:3 5:8 5:10 | 24:23 26:21 27:7 | earliest [3] 5:11 | expectant [3] 28:3 | 12:18 12:23 18:3 |
| 5:10 5:21 7:19 | 29:14 29:19 | 13:18 13:22 | 28:7 28:12 | 21:16 25:18 29:4 |
| 7:23 8:4 8:9 | defendants' [2] 11:12 | early [1] 17:21 | expedited [2] 14:3 | found [5] 15:11 |
| 8:12 8:16 8:16 | 15:16 | easier [1] 6:14 | 15:6 | 20:8 20:9 21:24 |
| 8:22 8:25 9:3 | definitely [1] 16:11 | effect [2] 6:5 | expeditious [1] 7:25 | 22:1 |
| 9:4 9:6 9:8 | Delaware [8] 1:2 | 9:6 | expeditiously [2] | four [4] 6:7 21:3 |
| 9:9 9:13 9:15 | 1:13 11:22 16:12 | effectively [1] 11:19 | 14:7 15:20 | 22:3 25:21 |
| 9:20 9:25 10:4 | 16:15 19:10 21:6 | effects [1] 12:22 | expire [1] 26:19 | front [1] 5:22 |
| 10:13 10:19 10:19 | 22:1 | effort [1] 16:11 | expired [1] 10:10 | full [4] 15:16 21:25 |
| 10:24 11:4 11:11 | deliberately [1] 27:4 | | explain [1] 8:11 | 21:25 25:5 |
| 11:14 11:14 11:23 | demonstrated [1] | | | |
| 11:25 12:7 12:9 | 16:22 | | | |
| 12:11 13:1 13:4 | depending [1] 14:4 | | | |
| 13:9 13:14 13:22 | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| fully [4] | 18:4 | 22:4 | 8:11 | 9:2 | 10:1 | 29:18 | | judgments [4] | 15:5 | life-span [1] | 26:20 |

(Index entries, alphabetical)

fully [4] 18:4  22:4  22:17  24:2
fundamental [1] 14:18
fundamentally [1] 13:18
G [1]  3:4
Gaffigan [1]  1:25
gentlemen [3]  26:3  27:11  28:24
given [3]  14:7  25:17  25:17
GMS [1] 1:11
goal [1]  17:1
good [8]  3:7  3:8  3:15  3:16  4:6  4:6  4:8  6:21
GOODWIN [1] 2:5
governed [1]  18:10
grace [1] 16:20
grateful [1]  17:9
GREGORY [1] 1:16
grievance [1]  10:16
guess [2]  19:5  26:18
H [1]  2:17
handle [4]  10:18  13:24  13:25  25:10
handling [2]  16:25  17:14
hands [1]  6:12
happy [1]  9:22
hash [1] 17:23
head [1] 19:6
healthcare [2] 22:23  23:4
hear [3]  4:25  11:17  25:2
heard [3]  18:4  24:16  25:8
hearing [7]  5:13  13:14  14:3  17:2  19:23  29:5  29:9
held [1] 3:6
help [1] 21:18
helpful [4]  17:11  17:20  21:15  22:14
herein [1]  11:12
HERRMANN [1] 2:6
himself [1]  13:10
history [1]  10:2
HITCHENS [1] 2:9
hold [3] 15:21  26:5  27:12
holders [1]  26:10
holiday [1]  28:22
Honor [59]  3:9  3:12  3:17  3:19  3:21  4:8  4:13  4:17  5:1  5:13  5:20  6:3  6:17  7:8  7:22  8:3

8:11  9:2  10:1  11:9  11:21  13:3  13:17  14:11  14:23  15:23  16:10  16:18  17:5  17:6  17:16  17:18  17:19  18:19  18:23  19:3  19:8  19:21  20:15  20:23  22:7  22:10  22:16  23:7  23:17  24:9  24:18  25:2  25:9  26:8  26:16  27:3  27:9  27:18  28:16  28:21  29:8  29:21  29:23
HONORABLE [1] 1:16
hope [2]  15:22  29:15
hospitals [1]  6:11
hours [1]  13:21
hundreds [1]  7:9
hypocrisy [4]  27:3  27:8  27:9  27:10
identical [1]  11:7
ill [1]  25:16
imagine [3]  24:14  25:23  26:9
implication [1] 23:8
implied [1]  15:12
import [1]  20:11
improperly [1]  11:4
in-depth [1]  11:1
Inc [13]  1:4  1:7  1:7  1:8  1:8  1:9  1:9  1:10  1:10  2:14  2:15  2:19
inclined [1]  5:14
including [2]  20:3  22:4
incorrect [1]  21:7
increase [1]  24:19
indeed [2]  6:11  14:9
independent [1] 11:15
indicate [2]  7:14  9:20
indicated [1]  5:14
indicates [1]  5:24
indiscriminately [1] 6:19
industry [2]  6:5  27:5
inform [2]  22:4  24:21
informal [1]  24:12
information [3] 6:13  20:13  22:1
informed [2]  22:17  24:2
infringement [4]  6:23  14:25  22:2  22:25
inherent [1]  16:3
initial [2]  9:1

29:18
injunction [12]  5:9  8:10  10:7  10:9  10:22  13:4  13:7  14:13  15:4  27:4  29:12  29:19
injunctive [1]  9:23
innocuous [1]  25:24
inquiry [1]  11:15
insofar [3]  12:11  16:8  21:25
instinct [1]  16:1
instituted [3]  7:16  23:16  23:21
insubordinate [1] 24:5
intend [2]  26:15  29:20
intent [1]  15:17
interest [3]  12:10  16:23  23:20
interested [3]  7:25  15:20  16:24
INTERNATIONAL [1]  1:7
intimately [1]  10:19
investigate [3]  11:1  25:15  27:15
investigation [1] 25:25
invited [1]  5:16
involve [3]  10:12  13:8  16:2
involved [5]  9:7  10:22  12:20  19:9  21:17
issuance [3]  8:9  10:21  29:12
issue [8] 11:14  12:13  15:10  22:19  26:2  26:4  26:9  26:17
issued [2]  18:12  20:13
issues [22]  4:21  4:22  5:3  5:4  8:8  8:13  8:21  9:10  9:13  9:21  10:23  11:7  11:7  12:1  12:4  12:18  14:10  14:15  16:2  16:14  20:1  25:6
itself [4] 5:21  7:15  12:11  21:16
J [2]  1:22  2:17
JAMES [2]  2:9  2:17
Jay [1]  3:22
Jeff [1]  3:12
JEFFREY [1]  2:3
Jim [1]  23:7
John [3] 2:5  3:13  5:1
judge [2]  15:1  18:13
judgment [4]  14:21  15:8  21:6  21:11

judgments [4]  15:5  16:5  16:5  21:8
June [1]  5:9
jurisdiction [2] 16:1  16:8
jurisdictions [1] 12:21
jury [5]  10:24  10:25  15:1  20:8  22:1
jury's [1]  20:14
keep [2] 21:16  23:13
kind [4]  6:5  9:21  10:1  14:15
Kirk [4]  2:10  3:24  3:24  4:3
L [1]  2:3
lack [1]  28:19
ladies [1]  28:23
language [1]  14:14
last [1]  26:6
latter [1] 8:17
law [3]  8:6  18:11  24:3
laws [2]  7:17  7:18
lawsuit [3]  7:17  15:19  18:16
lawsuits [1]  23:17
lawyers [2]  18:10  18:21
lay [1]  13:20
layman [1]  18:14
layperson [1]  18:25
LAYTON [1]  2:2
least [7]  5:11  6:15  11:7  11:18  18:9  23:24  24:8
leave [1] 24:8
leave-behind [2]  27:24  28:2
led [1]  5:9
left [2]  10:17  27:24
legal [2]  19:13  25:10
letter [23]  4:10  4:15  4:20  4:21  5:11  5:12  5:15  5:24  6:2  6:17  7:14  7:24  10:5  10:12  13:11  15:12  18:11  18:14  18:24  18:25  19:10  20:15  22:11
letters [2]  21:22  22:5
liability [7]  5:19  6:16  7:1  14:16  14:17  15:14  26:14
liable [2]  15:9  22:24
license [2]  18:9  18:10
licensed [1]  25:22
licensees [2]  25:20  25:21
lie [1]  11:12

life-span [1]  26:20
line [4]  3:10  3:13  16:25  17:14
listing [2]  25:19  25:21
litigated [1]  14:24
litigation [1]  19:9
LLP [5]  1:21  2:5  2:9  2:12  2:16
locally [1]  3:12
look [2]  20:1  28:16
looked [1]  14:2
looking [4]  13:5  13:6  22:7  29:7
Luxembourg [1] 19:14
M [1]  1:16
magazine [5]  25:4  28:3  28:4  28:6  28:12
mailing [1]  22:15
makes [1]  21:23
Massachusetts [2]  2:7  10:15
matter [8]  10:25  11:17  13:13  15:20  18:2  18:3  19:10  21:18
matters [7]  7:20  8:1  8:17  8:25  11:16  17:14  21:21
may [13] 11:12  13:25  15:20  15:22  16:17  16:18  17:22  20:9  22:14  25:24  26:2  26:6  28:23
McConathy [2] 2:17  3:23
MDL [1]  16:13
mean [6] 4:1  12:1  13:1  14:23  24:4  25:4
means [1]  6:6
medical [1]  14:16
meet [2] 17:4  17:12
member [1]  18:14
Menlo [1]  1:22
mentioned [1]  27:16
mentioning [1] 10:11
merely [2]  14:18  25:19
might [3]  11:3  19:1  20:12
minds [1]  12:14
misinterpreted [1] 26:12
misleading [2] 5:11  5:18
misstating [1]  13:16
misuse [2]  6:20  12:20
model [1]  19:6
modification [1]  5:16

File: 10T5PHAR.V1                    CondenseIt™                    modified - release

| | | | | |
|---|---|---|---|---|
| modified [1] 5:23 | obstetricians [17] | partially [1] 20:7 | plaintiff's [1] 10:21 | prosecuting [1] 18:16 |
| moment [1] 21:14 | 5:6  5:12  5:19 | particular [2] 10:23 | plaintiffs [1] 9:20 | protect [1] 12:13 |
| Monday [2] 28:19 | 5:25  6:6  6:8 | 26:19 | plans [1] 24:19 | provider [1] 14:16 |
| 28:22 | 6:10  6:20  7:2 | particularly [1] 20:12 | pleasure [1] 28:5 | providers [2] 22:23 |
| money [1] 27:6 | 7:5  7:9  12:3 | parties [10] 12:15 | point [12] 5:15 | 23:4 |
| MORRIS [1] 2:9 | 15:8  15:13  22:22 | 13:8  14:4  15:21 | 10:20  11:18  12:24 | public [2] 22:17 |
| most [6] 6:1  7:24 | 23:3  23:18 | 16:7  17:11  20:1 | 20:24  21:13  21:19 | 24:25 |
| 8:5  17:11  18:12 | obtained [2] 10:6 | 20:12  21:15  21:17 | 23:16  24:2  24:18 | publication [1] 27:23 |
| 23:18 | 14:21 | parties' [2] 13:14 | 27:12  27:13 | publication's [1] |
| mother [1] 28:7 | obviously [10] 11:22 | 29:11 | pointed [2] 16:20 | 27:23 |
| mothers [2] 28:3 | 12:1  12:4  12:20 | party [5] 8:18  12:10 | 26:13 | purport [1] 24:2 |
| 28:13 | 12:22  14:23  24:10 | 18:16  18:22  19:4 | points [1] 22:1 | purports [1] 18:13 |
| motion [6] 8:9 | 25:9  26:8  26:17 | patent [12] 6:20 | possibility [1] 14:2 | put [2] 21:21  26:5 |
| 9:1  10:21  13:19 | occurred [1] 5:9 | 12:19  14:21  14:25 | possible [3] 13:25 | putting [1] 26:21 |
| 29:11  29:18 | October [5] 4:10 | 20:10  22:2  22:2 | 13:25  20:18 | quickly [5] 7:21 |
| motions [13] 5:22 | 4:20  7:24  13:10 | 22:3  23:1  26:10 | possibly [1] 14:21 | 8:1  10:3  13:25 |
| 8:14  8:14  10:9 | 20:8 | 26:19  26:25 | post-trial [2] 5:22 | 14:1 |
| 11:2  11:2  11:24 | off [2] 9:18  19:5 | patents [21] 5:19 | 10:9 | quote [3] 7:9 |
| 13:14  14:4  14:12 | offensive [2] 25:22 | 6:24  9:7  10:12 | post-verdict [1] 11:1 | 22:25  23:13 |
| 15:3  15:5  29:11 | 25:23 | 10:13  10:17  11:3 | potential [2] 5:19 | R [1] 3:4 |
| move [3] 14:7 | offered [2] 18:18 | 11:5  11:8  12:20 | 9:14 | raise [3] 9:21  11:6 |
| 17:8  18:2 | 18:24 | 14:8  14:17  15:18 | POTTER [1] 1:19 | 14:9 |
| moved [1] 10:6 | office [2] 28:5 | 16:3  16:9  21:8 | powder [2] 21:16 | raised [3] 4:21 |
| moving [2] 15:20 | 28:19 | 23:2  23:5  26:18 | 23:13 | 8:8  26:5 |
| 21:15 | Officers [2] 19:16 | 26:20  29:16 | power [1] 16:4 | read [3] 7:23  14:14 |
| Moyer [3] 2:3 | 26:3 | patients [1] 6:9 | practice [3] 8:6 | 28:7 |
| 3:12  3:12 | offices [1] 27:25 | Paul [7] 1:22  2:6 | 18:11  24:1 | reading [2] 20:12 |
| MS [3] 28:3  28:10 | once [2] 25:25  27:23 | 3:14  3:20  15:23 | preliminary [10] | 22:20 |
| 28:14 | one [10] 9:3  10:3 | 19:21  27:20 | 8:9  10:7  10:9 | real [1] 10:3 |
| must [1] 17:13 | 12:1  12:19  16:13 | PAXSON [1] 2:16 | 10:21  13:4  13:7 | realistic [1] 15:25 |
| N [1] 3:4 | 18:6  20:17  20:24 | pay [2] 27:7  27:7 | 14:12  15:4  29:12 | really [1] 14:15 |
| name [1] 27:23 | 22:19  24:6 | pending [1] 5:22 | 29:18 | realm [1] 15:6 |
| necessary [4] 14:5 | one's [1] 12:10 | Pennsylvania [2] | premature [2] 15:2 | reason [4] 6:21 |
| 17:24  17:25  18:2 | oOo [1] 3:3 | 2:18  10:15 | 15:9 | 9:10  9:15  16:6 |
| need [3] 4:19  7:20 | open [3] 23:24  24:8 | people [3] 14:22 | prepared [1] 25:6 | reasonably [1] 13:21 |
| 17:22 | 26:14 | 23:20  24:20 | presided [1] 10:24 | reasoned [1] 21:18 |
| never [1] 27:2 | opportunity [9] 4:15 | perfectly [1] 8:15 | press [3] 21:3  21:4 | rebutted [1] 11:19 |
| new [7] 7:17  8:4 | 4:23  8:22  10:25 | perhaps [10] 8:19 | 22:17 | received [1] 4:10 |
| 8:7  9:16  11:19 | 14:13  15:16  18:4 | 9:15  17:8  24:15 | previously [2] 4:9 | receiving [1] 6:13 |
| 11:22  29:16 | 20:1  21:17 | 25:12  25:15  25:25 | 14:10 | recipient [1] 22:5 |
| next [1] 17:21 | opposed [1] 5:6 | 26:4  26:13  26:13 | principal [1] 8:24 | record [1] 11:2 |
| NOTE [1] 3:5 | orally [2] 8:23 | PERKINS [1] 1:21 | problem [3] 12:18 | reexamination [1] |
| nothing [1] 6:15 | 18:5 | permitted [1] 8:19 | 14:19  23:15 | 26:22 |
| notice [1] 8:21 | order [5] 5:17  5:23 | peruse [1] 11:1 | problematic [1] 19:2 | referring [1] 25:11 |
| November [8] 14:6 | 10:7  22:9  22:13 | Pharmastem [11] | procedural [2] 10:2 | refrain [2] 24:24 |
| 15:25  17:2  17:7 | orders [1] 5:21 | 1:4  3:18  5:5 | 26:23 | 25:3 |
| 17:8  19:24  29:5 | original [3] 15:7 | 5:25  6:16  6:22 | procedurally [2] | refusals [1] 7:11 |
| 29:9 | 15:12  15:18 | 7:4  7:8  10:6 | 8:24  11:21 | refused [2] 6:9 |
| now [13] 5:4  5:23 | ought [2] 20:2 | 18:11  22:25 | procedure [2] 16:13 | 20:22 |
| 7:14  7:16  10:10 | 25:5 | Pharmastem's [2] | 19:18 | refusing [2] 6:7 |
| 10:20  22:8  23:2 | outlined [1] 6:17 | 6:10  6:23 | proceed [3] 8:19 | 6:11 |
| 23:3  24:22  26:12 | outset [1] 8:12 | Phil [2] 3:19  22:10 | 11:23  25:18 | regard [1] 19:21 |
| 26:22  26:23 | overlook [1] 4:2 | Philadelphia [1] | proceedings [2] 9:23 | regarding [10] 10:12 |
| numerous [3] 6:6 | overturned [2] 21:6 | 2:18 | 12:24 | 10:16  15:4  15:13 |
| 6:8  6:10 | 21:11 | PHILIP [1] 1:19 | process [6] 12:13 | 15:14  20:3  21:2 |
| NUSTEM [1] 1:9 | P [2] 1:25  3:4 | phone [1] 17:23 | 16:4  17:24  21:16 | 24:19  29:3  29:4 |
| O [1] 3:4 | p.m [3] 1:13  3:6 | physicians [1] 23:22 | 23:23  26:6 | regards [1] 16:8 |
| objection [1] 9:12 | 29:24 | pick [1] 28:7 | PROCTER [1] 2:5 | Registry [2] 1:9 |
| obligations [1] 25:20 | page [1] 21:23 | PILLSBURY [1] | program [3] 23:22 | 2:15 |
| obstetri [1] 6:22 | paragraph [1] 21:24 | 2:12 | 24:20  24:21 | regularly [1] 20:17 |
| obstetrician [2] 14:16 | paraphrasing [1] | place [1] 11:4 | prohibition [1] 8:25 | rejected [1] 27:23 |
| 15:14 | 20:8 | placed [1] 11:3 | proper [1] 12:6 | release [2] 21:4 |
| obstetrician's [1] | Park [1] 1:22 | plaintiff [8] 1:5 | properly [1] 11:5 | 22:17 |
| 28:5 | part [4] 15:7  15:7 | 1:23  4:14  7:25 | proposed [3] 5:23 | |
| | 15:18  26:24 | 8:18  15:15  15:19 | 6:1  17:14 | |
| | | 18:8 | | |

File: 10T5PHAR.V1     CondenseIt™     releases - wonder

| | | | | |
|---|---|---|---|---|
| releases [1] 21:3 | sat [1] 28:4 | spoken [1] 4:3 | telephone [3] 1:14 3:5 29:24 | 23:24 |
| relief [5] 4:24 7:13 9:23 13:2 27:1 | says [1] 22:21 | stake [1] 19:19 | telling [1] 23:3 | unfortunately [1] 28:25 |
| | schedule [5] 13:13 14:2 17:4 17:14 29:8 | standing [1] 12:4 | temporary [1] 10:7 | United [2] 1:1 16:12 |
| reliefs [1] 9:14 | | stands [1] 24:22 | tend [1] 20:5 | |
| remedies [3] 24:10 26:25 27:1 | second [2] 21:23 27:13 | start [1] 4:20 | terminate [1] 10:8 | up [14] 4:3 4:10 6:12 8:25 11:14 11:23 12:2 13:12 13:22 23:25 26:1 26:14 26:22 28:7 |
| | | state [1] 7:17 | terms [1] 29:8 | |
| repeatedly [1] 7:5 | Secondly [1] 16:10 | statement [8] 15:12 20:6 20:7 21:7 21:10 21:23 23:8 26:12 | thank [4] 28:15 28:17 29:22 29:23 | |
| REPORTER'S [1] 3:5 | section [1] 20:23 | | | |
| | see [1] 24:11 | | themselves [1] 26:14 | updated [1] 20:17 |
| representations [1] 25:17 | seek [3] 16:14 24:10 27:4 | statements [1] 5:18 | THERAPEUTICS [1] 1:4 | upheld [1] 21:8 |
| | | States [2] 1:1 16:12 | | upper [1] 21:19 |
| represented [1] 19:4 | seeking [1] 9:14 | | thereabouts [3] 17:3 29:5 29:9 | Usually [1] 26:20 |
| request [3] 4:24 4:24 27:15 | seem [1] 26:6 | stationery [1] 18:11 | | v [1] 1:6 |
| | sending [1] 20:2 | status [1] 13:11 | thereof [1] 28:19 | valid [1] 21:9 |
| requested [1] 13:2 | sense [3] 8:5 17:15 24:16 | stay [1] 16:23 | third [1] 13:8 | validity [1] 22:2 |
| requests [1] 9:23 | | STEMCYTE [1] 1:8 | THOMAS [1] 2:12 | various [2] 11:23 13:14 |
| requires [1] 7:13 | sent [2] 6:19 10:6 | stipulated [1] 28:18 | thought [2] 14:5 24:16 | |
| resist [1] 15:16 | sentence [1] 7:24 | Stipulation [1] 29:3 | | ViaCell [6] 1:7 2:8 3:13 21:4 21:7 28:10 |
| resolve [1] 16:7 | separate [2] 9:11 10:14 | stop [2] 6:1 25:5 | threatened [2] 6:15 7:5 | |
| respect [1] 23:8 | | strikes [1] 19:2 | three [5] 10:12 16:9 23:2 23:5 26:19 | view [3] 5:18 8:20 20:5 |
| respond [6] 3:8 3:16 4:12 4:15 8:23 29:23 | September [3] 1:13 22:12 22:21 | subject [2] 19:20 29:16 | | |
| | series [1] 21:3 | submissions [1] 14:3 | through [6] 7:11 14:20 18:20 21:17 21:19 26:21 | viewed [1] 5:18 |
| responses [1] 11:24 | set [1] 4:10 | | | vitiates [1] 20:14 |
| rest [1] 21:21 | setting [1] 13:12 | submit [1] 17:13 | throwing [1] 6:12 | waiting [1] 28:5 |
| resting [1] 24:21 | settlement [2] 23:19 23:21 | subsequent [3] 5:12 20:11 20:13 | today [7] 3:11 4:20 12:25 15:1 25:15 25:17 26:18 | Ware [23] 2:6 3:14 15:23 15:23 15:25 16:16 16:18 16:20 17:4 17:17 17:18 19:21 19:22 20:21 23:11 25:1 25:11 25:25 27:3 27:10 27:15 27:20 27:22 |
| restraining [1] 10:7 | | | | |
| result [1] 6:9 | several [2] 7:8 14:24 | substantive [2] 17:25 24:2 | | |
| rethink [1] 14:14 | | | Tom [1] 3:25 | |
| review [1] 11:15 | share [3] 18:6 19:15 20:5 | success [1] 7:7 | top [1] 19:6 | |
| RICHARD [1] 2:10 | | successful [3] 26:21 26:22 26:24 | touches [1] 16:8 | |
| RICHARDS [1] 2:2 | short-circuit [1] 23:22 | | trade [1] 7:18 | |
| | sides [3] 17:15 18:3 18:4 | such [1] 16:20 | training [1] 19:14 | |
| right [11] 4:4 5:23 7:16 11:25 12:7 22:7 22:14 24:22 27:19 28:11 29:10 | | sue [1] 7:6 | trial [3] 10:24 10:25 15:7 | Ware's [1] 21:13 |
| | sides' [1] 14:4 | sued [1] 14:25 | | wary [1] 20:2 |
| | sign [2] 7:2 23:19 | suggest [4] 5:16 17:20 24:6 29:10 | TRO [1] 10:9 | webmaster [1] 20:19 |
| | signature [1] 18:12 | | troubling [1] 18:13 | website [4] 20:6 20:16 20:17 21:25 |
| rightful [1] 26:9 | signed [2] 7:9 23:21 | suggested [3] 17:1 17:15 24:13 | true [4] 9:9 9:9 20:7 25:13 | week [2] 17:8 17:21 |
| ripe [1] 12:25 | | | | |
| ripened [1] 13:13 | significantly [1] 6:1 | suggestion [1] 23:12 | truly [1] 15:19 | weigh [1] 21:20 |
| Rodgers [5] 2:17 3:21 3:22 23:7 23:7 | similar [3] 11:7 14:15 21:24 | suing [1] 23:20 | try [3] 4:19 5:2 5:17 | Wells [2] 18:17 18:18 |
| | | suit [1] 14:21 | | |
| | similarly [1] 24:23 | summer [1] 5:4 | trying [2] 15:8 24:6 | whereby [1] 21:19 |
| rolling [1] 15:10 | simple [2] 6:25 7:3 | supervisory [1] 16:4 | Tuesday [2] 1:13 29:2 | whole [2] 15:10 23:23 |
| Rovner [5] 1:19 3:19 3:19 22:10 22:10 | | supplementation [1] 29:18 | | |
| | simply [1] 22:23 | | | willful [1] 22:2 |
| | sit [3] 12:25 18:8 26:18 | supplements [1] 9:1 | two [3] 10:13 21:23 27:4 | William [2] 2:13 3:25 |
| rule [2] 19:5 19:5 | | support [1] 11:2 | type [1] 13:6 | WILLIAMS [1] 2:9 |
| ruled [1] 21:5 | sits [1] 28:6 | Supreme [1] 18:8 | U.S.D.C.J [1] 1:16 | |
| rules [3] 19:6 19:17 19:18 | sitting [1] 28:5 | surrounding [1] 5:3 | ultimate [1] 13:2 | Wilmington [1] 1:13 |
| | situation [2] 6:13 7:13 | suspect [1] 18:9 | ultimately [2] 17:1 21:21 | WINTHROP [1] 2:12 |
| ruling [3] 21:2 22:21 22:22 | | Systems [3] 1:8 2:14 3:24 | | |
| | SLEET [1] 1:16 | | umbilical [1] 22:23 | wisdom [1] 11:12 |
| rulings [4] 17:24 17:24 17:25 20:13 | someone [2] 27:5 27:5 | taking [1] 8:25 | under [8] 5:19 7:17 7:17 9:12 14:17 16:13 18:12 22:25 | wish [1] 16:17 |
| | | TECHNOLOGIES [1] 1:10 | | withdrawn [1] 20:21 |
| run [3] 25:9 26:25 27:21 | somewhere [1] 6:3 | | | within [3] 8:17 11:5 13:21 |
| | soon [1] 20:18 | TECHNOLOGY [1] 1:9 | understand [7] 11:6 20:22 24:9 25:3 26:16 27:14 28:1 | |
| running [1] 26:22 | sorry [1] 28:22 | tee [1] 11:13 | | without [1] 26:12 |
| S [1] 3:4 | speak [1] 13:10 | teed [1] 11:23 | | wonder [2] 8:4 14:6 |
| safe [1] 8:2 | specific [1] 5:10 | | understood [2] 13:10 | |
| San [1] 2:13 | | | | |

Telephone Conference - 3:05 p.m.     Index Page 5

| Word | Ref 1 | Ref 2 |
|---|---|---|
| wondered [1] | 7:23 | |
| word [1] | 19:15 | |
| worse [1] | 16:21 | |
| writing [2] | 8:23 | 18:5 |
| written [1] | 11:24 | |
| wrong [2] | 18:15 | 23:13 |
| year [1] | 26:20 | |
| years [2] | 26:20 | 27:4 |
| yesterday [3] | 6:18, 15:3 | 20:16 |
| yet [2] | 4:15 | 25:3 |
| yourself [1] | 23:25 | |
| yourselves [1] | 24:8 | |